## Hannah Newburg and John P. Newburg v. William L. Coyne.

1. USURY—*Shifts and Devices.*—If usury has been taken, or is included in a mortgage sought to be foreclosed, and that is a continuance of the original indebtedness, no matter what shifts or devices have been resorted to, the defense is available, and a court of equity will relieve from its burdens.

2. SOLICITOR'S FEES—*Limited to the Amount Claimed.*—It is error to allow solicitor's fees in a foreclosure proceeding in excess of the amount claimed, without an amendment to the bill.

Foreclosure.—Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the May term, 1899. Reversed and remanded, with directions. Opinion filed October 12, 1899.

JESSE E. SPENCER, attorney for appellants; SWEENEY & WALKER, of counsel.

J. T. KENWORTHY and S. R. KENWORTHY, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

This was a bill in equity, filed by appellee against appellants, for the purpose of foreclosing a mortgage given by appellants to appellee, dated October 6, 1894, on certain premises in Rock Island county, to secure four promissory notes—three for $500 each, payable respectively January 1 and August 1, 1895, and January 1, 1896; the fourth note was for $2,694.73, due August 1, 1896. The two notes first mentioned, for $500 each, were paid, and the controversy arises over the other two notes remaining unpaid.

The bill was filed April 22, 1896, after the third $500 note became due, but before the maturity of the note for $2,694.73. For the non-payment of the $500 note the complainant declared the whole amount due, in accordance with the provisions of the mortgage. The bill alleged that

the mortgage was given to secure the purchase money for the lands and tenements described therein, and that the notes for $500 and $2,694.73, respectively, were unpaid. That under the mortgage complainant was entitled to reasonable attorney's fees, which were a lien upon the premises, and that such reasonable attorney's fees were $200, making a total amount which complainant claimed was due him of $3,394.73 and interest. The bill prayed for an accounting, and for the usual decree of sale.

To this bill appellants filed an answer denying that they were ever indebted to appellee for purchase money of the premises described in the bill. They admit the execution of the notes, but aver that the sum represented thereby was to a large extent made up of usurious and illegal charges for interest, and deny that they in fact owe complainant anything on said notes and mortgage, and deny his right to the decree of foreclosure prayed for. The answer further avers that on December 17, 1895, appellants owed appellee $2,400, for which they gave appellee a mortgage on the premises described in the bill, and other property, with a chattel mortgage as collateral security; and that, though subsequently and at different times, at the request of appellee, written instruments were entered into between appellants and appellee, they were in fact but a continuation of said original mortgage indebtedness, and were mere schemes and devices on the part of appellee to exact unlawful charges and usurious interest, and that all of said subsequent papers, including the mortgage in suit, were and are tainted with usury. The answer sets out in detail the various transactions between the parties leading to, and terminating in, the mortgage sought to be foreclosed, which we do not deem it necessary to here repeat with particularity.

In addition to the answer, appellants filed a cross-bill, seeking to have the notes and mortgage canceled and surrendered, and for an injunction restraining appellee from assigning or transferring them.

The cause was referred to the master to take and report

proofs, and the evidence, being taken mostly by deposi-
tions, was by the master reported to the court. On the
hearing a decree was entered in favor of complainant for
the full amount due on the notes, for principal and interest,
and also for the sum of $600 as solicitor's fees.

The evidence, briefly stated, shows that appellee origi-
nally owned the premises described in the mortgage, and on
December 17, 1885, sold and conveyed them to appellant
Hannah Newberg, taking back a mortgage for purchase-
money, amounting to $2,400. Appellants being in default
in payment, reconveyed the property to appellee April 25,
1889, and the latter gave appellants a contract to convey
the property back to them on payment of $3,200. Being
again in default, appellee insisted on a reconveyance of the
property to him, and on April 14, 1891, appellants executed
to him a quit-claim deed of the premises, and appellee on
April 15, 1891, gave them· a new contract of sale for the
sum of $4,631.50. Certain letters patent were also assigned
by J. P. Newburg as additional security.

On January 20, 1894, appellants being again in default,
appellee insisted that they should reconvey the premises to
him, and on that date they executed and delivered to him
their warranty deed therefor. On October 6, 1894, appel-
lee again deeded the land to Hannah Newburg, and appel-
lants executed to him the mortgage in suit for the sum of
$4,194.73.

It is insisted by appellants that these various convey-
ances, deeds, mortgages and articles of agreement, were all
parts of one and the same transaction, and were but a con-
tinuation of the original mortgage indebtedness. We are of
the opinion the evidence sustains this contention, and that
appellants are not barred from setting up the defense of
usury.

We shall not attempt to analyze or discuss the evidence
tending to show there was in fact usury taken by appellee
and charged in these transactions; suffice it to say we have
given all the evidence careful consideration and are of
opinion it would warrant the conclusion that appellants'

Newburg v. Coyne.

contention in that regard is well founded. Under well known rules of law, abundantly sustained by the decisions of our Supreme Court, which need not be cited, if usury has been taken, or is included in the mortgage sought to be foreclosed, and that is a continuation of the original indebtedness, no matter what shifts or devices have been resorted to, the defense may still be availed of, and a court of equity will relieve from its burdens.

We think it was error to allow $600 for solicitors' fees under the pleadings in the case. The bill only claimed $200, and alleged that was a reasonable fee. There was no amendment to the bill, and on what principle a complainant is entitled to recover three times the amount he claims in his bill we are at a loss to see. We do not determine the question as to whether or not the fee was reasonable for the services rendered by the solicitors, aside from the allegations of the bill; what we hold is, that, the bill only claiming $200, it was error to allow a greater sum without amendment.

Other points discussed by counsel in argument we have not deemed it necessary to elaborate upon although they have all been duly considered.

Our conclusion is that the decree must be reversed, and the cause remanded with directions to enter an interlocutory decree referring the cause to a master to state the account. Interest will be allowed on the original debt to the time when usury was first taken, at the contract rate, and after that at six per cent to July 1, 1891, and at five per cent since that date. But as to rents of other lands, if any, which may have been included in the mortgage in suit, interest thereon will be allowed at whatever rate was contracted for between the parties as to such rent. Reversed and remanded, with directions.